United States Magistrate Court
CDS-SDTX
FILED

SEP **03** 2025  3C

Nathan Ochsner, Clerk
Laredo Division

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 5:25-CR-00442 |
| GIOVANNA LOZANO-HERNANDEZ | § § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas, and Brandon Scott Bowling, Assistant United States Attorney, and the defendant, Giovanna Lozano-Hernandez, ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count 1 of the indictment. Count 1 charges Defendant with conspiracy to conceal, harbor, or shield an illegal alien within the United States, in violation of Title 8, United States Code, Section 1324 (a)(1)(A)(iii) and (v)(I). Defendant, by entering this plea, agrees that she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii) and (v)(I), is imprisonment of **not more than 10 years** and a fine of not more than $250,000. *See* Title 8, United States Code, Section 1324(a)(1)(B)(i). Additionally, Defendant may receive a term of supervised release after imprisonment of not more than **3 years**.

*See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than **3** years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

Pursuant to Title 18, United States Code, Section 3014(a)(5), immediately after sentencing, and in addition to the mandatory special assessment identified above, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5,000.00) per count of conviction, if non-indigent as determined by the court. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status. Defendant understands that if she is not a citizen of the United States, by pleading guilty she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if she is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that she wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 21 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to immigration narcotics, and money laundering. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and

sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.

5

Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

11. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count 1 of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges she is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

12. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States

Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence

7

imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

15. Defendant understands that by entering into this agreement, she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a)    If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

    (b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court; and

    (c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

16. Defendant is pleading guilty because she is in fact guilty of the charges contained in Count 1 of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

In January 2024 Homeland Security Investigations (HSI), opened an ongoing investigation as to the Nunez Human Smuggling Organization (NUNEZ HSO) based in Laredo, Texas. This organization is operated and lead by Giovanna Lozano-Hernandez' (Defendant's) husband Danny Nunez (Nunez). Defendant conspired with Nunez and others known to both transport and harbor illegal aliens in furtherance of their smuggling arrangements. Among other roles, Defendant operated within this HSO as a stash house operator and a bookkeeper for the HSO documenting, recording, and managing the HSOs accounts for payments and aliens both harbored and transported.

During a court authorized search of the Defendant's residence on December 5, 2024, agents located evidence of alien smuggling to include the following:

1. A large number of cell phones containing communications, ledgers, and videos showing the smuggling of aliens.

2. Contained within cell phones possessed and used by Defendant were numerous messages and other communications between Defendant, Nunez, and other coconspirators discussing the transportation of, harboring of, payments to be made, and the recording of this information on ledgers by Defendant.

3. Paper ledgers drafted and managed by Defendant date back to March 2023 documenting aliens smuggled or harbored by the HSO and payments made.

4. $36,829 dollars in United States currency in the form of proceeds from the smuggling of aliens by Defendant and the HSO.

5. Two illegal aliens who were recently transported to the home for housing by Defendant before being smuggled further into the interior of the United States.

6. A review of the ledgers, messages, and videos contained the names, identifiers, and payments made by Defendant and the HSO for over a hundred aliens from March 2023 to December 5th, 2024.

On or about October 28, 2024, Homeland Security Investigations (HSI) interdicted an in-progress human smuggling event while on a surveillance operation pursuant to an ongoing investigation. During this incident, HSI apprehended and identified approximately ten (10) illegal aliens who had been loaded into a semi-truck cabin. During this incident, HSI observed and identified Danny Nunez as an operator of one of the vehicles seen transporting and unloading several illegal aliens into the semi-truck cabin. HSI conducted analysis of one of the seized cellular devices seized at Defendant's home and determined to be utilized by Defendant which revealed a digital image stored within the cell phones WhatsApp Images folder, dated October 29, 2024. The image depicts a paper notebook ledger with nine (9) names, claves, and various dollar amounts listed. Five (5) of the names listed on the digital image of the paper ledger match the names of illegal aliens that were recovered during the human smuggling event on October 28, 2024.

HSI reviewed two (2) WhatsApp messaging threads between Defendant and Nunez that occurred between January 31, 2024, and December 3, 2024, on two different phones. These message threads contain over 3,500 messages to include audio, text, and video. These WhatsApp messages contain numerous digital images of paper ledgers and illegal aliens transmitted between Defendant and Nunez. Numerous voice messages exchanged within these WhatsApp messaging threads between them contain detailed conversations of human smuggling activity, including counts of illegal aliens who had already been transported, housed, and/or unaccounted for financially. Multiple video messages exchanged within these WhatsApp messaging threads

10

between Defendant and Nunez depict the transportation of illegal aliens. The messages include audio, video, text messages and GPS locations. One of the message chains had over 190 illegal aliens that can be seen in pictures and video messages sent from NUNEZ to Defendant. Defendant sent numerous pictures of ledgers to NUNEZ with different dates, names of aliens and their claves with different amounts in the thousands of dollars. NUNEZ can be heard in the voice messages asking Defendant for accounts and asking to keep track of the aliens being transported and housed. Defendant then would reply with pictures and totals of accounts. Defendant can be heard in voice messages asking NUNEZ for number of aliens being dropped off to keep accounts up to date.

### Breach of Plea Agreement

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

11

19. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

### Restitution

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $ N/A Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. §1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

### Forfeiture

21. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation, including but not limited to the following specific assets:
- $36,829 in United States Currency.

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least $ N/A from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount or, if not agreed, that the Court will determine the proper amount of a money judgment;

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

**Financial Statement**

22. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

23. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

24. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that she is pleading guilty freely and voluntarily because she is guilty.

25. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Laredo_, Texas, on _Wednesday, Sept. 03_, 2025.

_youana Cozano_
GIOVANNA LOZANO-HERNANDEZ

APPROVED:

Nicholas J. Ganjei
United States Attorney

By: ___Brandon Bowling___
     Brandon Bowling
     Assistant United States Attorney
     Southern District of Texas

_____
Attorney for Defendant

14